FIRST DEPARTMENT, JULY, 1985

(July 2, 1985)

■ NEW TESTAMENT MISSIONARY FELLOWSHIP et al., Respondents-Appellants, v E. P. DUTTON & Co., INC., et al., Appellants-Respondents, et al., Defendants.—Order, Supreme Court, New York County (Stecher, J.), entered on or about December 1, 1982, granting defendants-appellants-respondents' motion for summary judgment only to the extent of striking paragraphs 15, 16 and 17 of the complaint except for subdivisions 15 (g), 15 (h) and 16 (a), modified, on the law, to reinstate subdivisions 15 (b), 16 (b), 16 (d), and all of paragraph 17 except 17 (a) and (g), and otherwise affirmed, without costs or disbursements.

The complaint in this defamation action alleges 31 instances of libel in a book, Let Our Children Go, which purports to be an account of one of its authors, Ted Patrick's, deprogramming young people claimed to have been brainwashed by certain religious groups including plaintiff Fellowship. The other plaintiffs are founding members of the Fellowship. Defendants, the authors, editor, and publisher, moved for summary judgment on the ground that plaintiffs are public persons whose evidence cannot meet the burden of proving malice, requisite under *New York Times Co. v Sullivan* (376 US 254) and its progeny. Special Term found an issue of fact whether plaintiffs are public or private persons and denied summary judgment on this point. Searching the record, however, it found that, the complaint having pleaded no special damages, the claims of defamation must be considered as allegations of libel per se, and, so considered, found that 28 of them did not state facts sufficient to constitute a cause of action. *Sua sponte,* it granted summary judgment dismissing these allegations, with 30 days leave to replead to allege special damages. Plaintiffs have not repleaded.

Except for the additional allegations of libel that we find should be reinstated and the necessity to rule on a question raised here that was not raised below, we would affirm for the reasons stated by Special Term. In doing so, we recognize that this case may present an opportunity for determining the open question whether the factual issue, public person or private person, should be decided by the court, the jury, or both (*see, Maule v NYM Corp.,* 54 NY2d 880, 881-882, n). We, however, feel constrained to apply the usual summary judgment rules, leaving any change to the Court of Appeals, especially since the point has not been raised here or below by any of the parties.

Defendants argue here that they were entitled to summary judgment because, were plaintiffs deemed to be private persons, their evidence does not meet the lesser burden of gross irresponsibility imposed by *Chapadeau v Utica Observer-Dispatch* (38 NY2d 196), and that, even as private persons, plaintiffs would still have to prove actual malice to entitle them to the punitive damages they seek (*see, Gertz v Robert Welch, Inc.,* 418 US 323). Plaintiffs contend their evidence creates an issue of fact surpassing gross irresponsibility and rising to malice. We agree.

Defendants editor and publisher cannot claim reliance on the defendant authors Patrick and Dulack if they had obvious reasons to doubt their veracity or accuracy (*see, Goldwater v*

*Ginzburg,* 414 F2d 324, 337, *cert denied* 396 US 1049). Plaintiffs' evidence of defendant editor's personal knowledge and good opinion of plaintiff Phillips, and the evidence of the editor's skepticism of defendant Patrick's background and bizarre theories might well be found obvious reasons for doubt. Evidence of alleged hostility may support an inference of actual malice (*Di Lorenzo v New York News,* 78 AD2d 669, 672). Defendant Patrick's own deposition provides considerable evidence of malice toward plaintiffs. Defendant editor recognized the tendency in the book "to lump various cults and groups together by using somewhat dubious overarching theories". This evidence, coupled with other evidence of failure to verify statements made in the book, would be sufficient to support a finding of actual malice.

A writing which " 'tends to expose a person to hatred * * * or to induce an evil or unsavory opinion of him * * * [or] which tends to disparage a person in the way of his office, profession or trade' " is libelous per se (*Tracy v Newsday, Inc.,* 5 NY2d 134, 135-136). The plaintiff Fellowship is chartered under the New York Religious Corporations Law. Two individual plaintiffs are ordained ministers. The third is a lay leader. We find that plaintiffs have alleged libels per se other than in those subdivisions of the complaint retained by Special Term. Subdivision 15 (b) accuses plaintiffs of entrapping a young man, putting him through a marathon of prayer sessions, to leave him emotionally exhausted with his resistance broken so that they could "hammer" him with denunciations of his university, his government, and his family as works of Satan. Subdivision 16 (b) ties plaintiff Hannah Lowe to a movement whose pattern is the employment of "psychological fear", "turning of the kids against their families", "rip-offs" and "glorification of the cult leader". Subdivision 16 (d) has the author Patrick trying to persuade a newspaper editor that what happened to Patricia Hearst is identical to what happens to the followers of Hannah Lowe. All of paragraph 17, except 17 (a) and (g), which merely state opinions, tars all the groups covered by the book with the same brush, citing language that is libelous per se, for example: that they use mind control to ensnare young people "who sign over their lives and property to con men they have been duped into believing are the Messiah"; "parents are blackmailed into contributing large sums of money to the cult". No innuendo is necessary to bring out the defamatory character of such words. It is for a jury to determine whether these words, directed generally to the "cults" covered in the book, would

lead the reasonable reader to believe, in the context of the whole book, that the plaintiffs had indulged in these practices. Concur—Sullivan, Carro and Lynch, JJ.

Murphy, P. J., and Ellerin, J., dissent in a memorandum by Ellerin, J., as follows: We would affirm in all respects on the opinion of Special Term (Stecher, J.).

In a comprehensive and meticulous analysis, the court below carefully evaluated each of the paragraphs and subdivisions in the complaint alleged to contain the libelous statements and, in our view, properly concluded that the language, in the subdivisions here in issue, was not libelous per se but required the pleading of an innuendo to demonstrate the defamatory meaning. The subdivisions are essentially narratives dealing with the deprogramming of a particular individual and with aspects of other specific cases for which the complaint itself appears to recognize the need for an innuendo, in each instance including an explanatory reference designed to "point out the libelous meaning of the words used" (*Tracy v Newsday, Inc.,* 5 NY2d 134, 136). In that context, the court below properly dismissed the various subdivisions with leave to replead upon the requisite showing of special damages.

Parenthetically, it may be noted that where the pleading specifically alleges that defendant Patrick in his book asserts that the Fellowship encouraged its members "to lie and even steal" and that "they are all crooks", such language was held by the court below to constitute libel per se in distinction to language in the subdivisions here in issue which requires additional explanation to demonstrate its defamatory import.